**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

| | |
|---|---|
| MICHAEL WEISS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| UNIVERSITY OF MIAMI, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

010920-21/1267930 V1

## TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ........................................................................................1

II.    JURISDICTION AND VENUE ........................................................................2

III.   PARTIES ...........................................................................................................3

IV.   FACTS ...............................................................................................................5

      A.    Background ............................................................................................5

      B.    The Novel Coronavirus Shutdowns And Defendant's Campus Closure .................9

      C.    Defendant's Refusal To Issue Tuition Refunds ...................................13

V.     CLASS ACTION ALLEGATIONS ................................................................14

VI.   CAUSES OF ACTION ....................................................................................18

      COUNT I  BREACH OF CONTRACT.....................................................18

      COUNT II  UNJUST ENRICHMENT .....................................................19

      COUNT III  CONVERSION ....................................................................20

PRAYER FOR RELIEF ...........................................................................................21

JURY DEMAND .......................................................................................................21

Plaintiff, MICHAEL WEISS, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant UNIVERSITY OF MIAMI ("Miami"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.      NATURE OF ACTION

1.      This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.      Despite sending students home and closing its campus(es), Defendant continues to charge for tuition and fees as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff, students, and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for its response to this Class Action Complaint.

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff, students, and the Class Members did not receive the full value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6), and at least one class member is a citizen of a state different from Defendant. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Further, general diversity exists as Plaintiff is a citizen of Virginia, whereas Defendant is a citizen of Florida for purposes of

-2-

diversity. Furthermore, Plaintiff alleges that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6.     Venue is appropriate in this District because Defendant is located within the Southern District of Florida. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.     PARTIES

7.     Plaintiff Michael Weiss is a citizen and resident of the State of Virginia. Plaintiff is the parent of a current Miami student and paid his son's tuition and fees for Defendant's Spring 2020 academic term.

8.     Plaintiff/Plaintiff's son is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, costs, and/or charges assessed and demanded by Defendant for the Spring 2020 term. Plaintiff paid Defendant for opportunities and services that his son will not receive, including on-campus education, facilities, services and activities.

9.     While Plaintiff's son could have obtained his degree online, Plaintiff's son specifically selected an in-person, in-class experience for the variety of educational experiences and benefits that only an in-person program can deliver. Indeed, Plaintiff selected Miami for its numerous amenities, its campus, as well as the educational opportunities it would provide him.

10.     With Miami's campus closure and transition to an online-only educational experience, Plaintiff's son has suffered a decreased quality of experience, education, and lost access to important university facilities and experiences that were bargained for by selecting in-person experiences.

11.     For example, Defendant has barred Plaintiff's son from the use of the student athletic center, classroom instruction, as well as university library facilities, which Plaintiff's son

-3-

regularly utilized for study and group project work. Defendant also prevented Plaintiff's son from participating in extracurricular activities, including club athletics.

12.     And with the transition to online-only classes, Plaintiff's son noticed a shift in and loss of academic rigor.

13.     While Plaintiff paid Miami for an in-class experience that would enable his son to communicate directly with his professors, attend office hours, and work through issues in-person, such experiences are non-existent following Defendant's campus closure.

14.     Some classes resulted in less course assignments, with planned quizzes and exams outright cancelled. Another exam, shifted to online administration was riddled with typographical and other errors.

15.     Numerous group projects, an important aspect of Plaintiff's son's core classes, were cancelled and transitioned to individual papers. With such a transition, Plaintiff's son lost out on the ability to interact with peers, develop his network, and friendship.

16.     Plaintiff's son also lost in-person interactions with his academic advisors. But with the transition, Plaintiff's son finds it difficult if not impossible to obtain such advising remotely due to communication difficulties.

17.     And for one of Plaintiff's son's classes, a key component to the class required Plaintiff to explore local Miami cultural venues and write about the experience. Instead, Plaintiff's son watched internet videos and consulted websites.

18.     On top of these difficulties, some professors struggle with online educational delivery technology, with Plaintiff's son observing their difficulties in logging into live chats, trouble sharing presentation screens, locking presentation screens, and countless other technical difficulties.

19.     Defendant University of Miami is an institution of higher learning located in Coral Gables, Florida among other locations within this judicial district. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.    FACTS

### A.    Background

20.     Founded in 1925, University of Miami has a current enrollment of more than 17,000 students in 11 schools and colleges serving undergraduate and graduate students in more than 180 majors and programs.

21.     For fiscal year 2019, Miami's endowment totaled $997 million, with net assets of $2.392 billion. That same year, Miami collected $560.4 million in tuition and fees (net), a $25.6 million increase from the prior fiscal year. Miami also reported total operating revenues reaching $3.574 billion.

22.     Over the last decade, Miami has engaged in multiple record breaking campaigns, including the "Momentum" campaign, which amassed "$1.4 billion in donations at a time when no Florida school had ever before topped the billion-dollar mark"[2] and the "Momentum2" campaign, through which Miami surpassed $1.6 billion in donations.[3] And more recently in FY2019, Miami "raised $321.8 million—more than $139 million over the previous year, and endowment giving increased by 62 percent, making [FY2019] one of the best fundraising years in the University's 94-year history."[4]

---

[2] Michael Vasquez, *UM Kicks off $1.6 billion campaign,* The Miami Herald (2012).

[3] https://news.miami.edu/stories/2015/05/um-surpasses-1.6-billion-m2-campaign-goal.html.

[4] https://president.miami.edu/_assets/pdf/presidents-report-2019.pdf.

23.     Recently, Miami received an estimated $8.1 million from the Federal Government as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").[5]

24.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see*, *e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

25.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

26.     A few examples of such efforts to promote that experience follow.

27.     Miami promotes itself as "one of the best research universities in the Americas," supporting students with "mission-driven discoveries with cutting-edge technology, state-of-the-art equipment, and award-winning faculty."[6]

28.     Miami notes that "[t]here is no substitute for the experience of visiting the University of Miami campus," encouraging applicants to "[s]ee first-hand why students chose to live and learn on our Miami campus."[7]

29.     As reflected in its requirement that non-local first-year students to live in University housing, Miami recognizes the importance of living on (or near) campus and the experiences that result from such in-person interactions, noting "[l]iving on campus is a chance

---

[5] https://www.insidehighered.com/news/2020/04/10/listing-funds-each-college-can-expect-receive-under-federal-stimulus.

[6] https://admissions.miami.edu/undergraduate/index.html.

[7] https://admissions.miami.edu/undergraduate/student-life/visit/index.html.

-6-

to live and interact with culturally diverse students and receive support and enhanced learning opportunities through live-in faculty and student affairs staff."[8]

30.    To that end, Miami's Housing & Residential Life team "focuses its efforts on developing students both personally and professionally throughout their time on campus. By living on campus, students are footsteps away from a variety of academic, cultural and social experiences that are hard to get elsewhere."[9] Thus, Miami explains that "[a]s a result of the residential experience, resident students can expect to "[e]ngage and connect with the campus community," "[l]earn ways to take care of yourself," "discovery and discuss new ideas outside of the classroom"—including through interaction "with faculty and University leaders in the residential setting." And in doing so, students develop "skills to thrive beyond UM" such as by "[d]iscovering tools and strategies promoting the advancement of interpersonal skills" and "[r]ecognizing the resources and behaviors that promote academic, intrapersonal and professional success."[10]

31.    Further, Miami provides top facilities for student use.

32.    Such facilities include, but are not limited to, its library system which "rank[s] among the top research libraries in North America with a combined collection of over 4 million volumes, with over 100,000 current electronic and print serials"[11] and which also contain extensive group study spaces, the Herbert Wellness Center, "[d]esigned to be one of the finest centers in the nation for recreational sports, fitness, and wellness education programs . . . "[12]

---

[8] https://admissions.miami.edu/undergraduate/about/FAQs/student-life/index.html.

[9] https://hrl.studentaffairs.miami.edu/living-on-campus/what-to-expect/index.html.

[10] *Id.*

[11] https://welcome.miami.edu/academics/libraries/index.html.

[12] https://wellness.studentaffairs.miami.edu/facilities/index.html.

-7-

33.     Moreover, Miami boasts the extensive, hands-on research and educational experiences to students. Miami offers a number of research centers and institutes which "reflect our broad interests and expertise and our commitment to raising awareness, finding solutions, and creating connections through hands-on learning, scholarly research, and community outreach and education."[13] Similarly, its business school describes "[t]he School's innovative undergraduate business curriculum takes on a global perspective with hands-on real-world learning from day one, providing students with the knowledge and skills they need to succeed in today's increasingly competitive economy."[14]

34.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

35.     For the Spring 2020 term, Defendant assessed the following tuition and fee charges per semester to full-time undergraduates: $25,200 in tuition, $167 as a student activity fee, $99 as an athletic fee, $156 for wellness center fee, $186.00 for student health and counseling centers fee, and $166 for a student center fee. Furthermore, on-campus housing and meal charges reach $7,734 per semester. Defendant assessed graduate students at the rate of $2,100 per credit hour, along with various other fees depending on the course of study and course load.

36.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges flat-rate tuition at $3,370 per term while Southern New Hampshire University

---

[13] https://welcome.miami.edu/research/index.html.

[14] https://www.bus.miami.edu/academic-programs/undergraduate-business-education/index.html.

charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

**B.      The Novel Coronavirus Shutdowns And Defendant's Campus Closure**

37.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

38.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

39.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

40.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

41.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

42.     On or about March 12, 2020, Defendant extended students' spring break through March 22, 2020, with classes to resume on March 23, 2020 "strictly in online/remote/distance learning environments through at least April 4."

43.     On or about March 25, 2020, the City of Coral Gables issued a "safer at home" order, requiring residents and businesses to restrict non-essential activities.[15]

44.     On or about March 17, 2020, Defendant effectively closed its campus migrating all, or substantially all, classes online beginning March 23, 2020.[16] That day Defendant closed most on-campus facilities, including the Wellness Center, pool, and university libraries.[17] Defendant also "strongly encourage[d] all students to return to their permanent residence and not remain in on-campus housing."

45.     Defendant's implantation of online learning required "hours of training, reworking of courses and syllabi, and translating your teaching into digital platforms—all accomplished in a single week."[18]

46.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff's son and the Class Members.

47.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

48.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per

---

[15] https://coronavirus.miami.edu/updates-and-messages/index.html.

[16] *Id.*

[17] *Id.*

[18] *Id.*

semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[19]

49.     As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[20]

50.     Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and

---

[19] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

[20] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

interact with academics and peers (not to mention the vast numbers of innovators, creators, doctors, organizers, and more that congregate on our campus) will no longer be provided."[21]

51.     Miami students share such sentiments. As highlighted in The Miami Hurricane student newspaper editorial titled "UM's response to COVID-19: The good, the bad and the uncertain" the student editorial board opined: "We doubt this will actually happen, but it would be nice to receive some kind of tuition refund. UM has not yet spoken on this matter, even though student group chats have been buzzing about it. We understand that this is a strange situation, but we didn't pay $25,000 this semester for online classes, which, to be frank, are just not as valuable as in-person classes. Plus, we're not using any of UM's on-campus facilities or resources, further devaluing our experience. We should pay for what we're getting, not what we wish we were getting."[22]

52.     Another article from the Miami Hurricane recognized "Remote learning just isn't the same, students say."[23] As the article explained the student-experience:

> In-person lectures and discussions turned into virtual classes
> mostly held either through Zoom or Blackboard Collaborate Ultra.
> Hands-on classes such as chemistry labs now require students to
> watch videos of the labs taking place rather than performing the
> experiments themselves. For students with back-to-back classes,
> this can mean spending several consecutive hours of their day
> staring at screens. Nearly a month into remote classes with just two
> weeks left in the semester, many students are finding that learning
> from their homes isn't the same.

---

[21] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

[22] https://www.themiamihurricane.com/2020/04/03/ums-response-to-covid-19-the-good-the-bad-and-the-uncertain/.

[23] https://www.themiamihurricane.com/2020/04/22/remote-learning-just-isnt-the-same-students-say/.

"When I go onto Zoom classes it's really hard to pay attention and learn," Sleeman said. "I'm very discouraged because I don't feel like I'm learning anything."

Sleeman said that while he appreciates his professors' efforts, the online format is not as conducive to learning, especially when students aren't used to it.

On top of all of his classes, Sleeman is a workshop leader for organic chemistry, which he continues to host virtually. There too, he has noticed a similar trend among students.

"Less people show up to workshops and I think that's indicative of less motivation," Sleeman said. "I used to have 10 people show up and now I have two or three. Even though there is more time in the day, people aren't going to things like this involving school."

***

Students, professors and administrators alike agree that virtual learning is not an ideal format. Meeting over Zoom or Collaborate Ultra has changed classroom dynamics, Kain said.[24]

## C.    Defendant's Refusal To Issue Tuition Refunds

53.    Given Defendant's transition to online classes and COVID-19 concerns, Defendant asked students to vacate student housing.

54.    While Defendant has agreed to provide some refunds to certain fees and services, *i.e.*, housing, dining, parking, student center, wellness center, health and counseling, student activities, and athletics fees, with such fees prorated to March 25, 2020, when classes transitioned to an online format.[25]

55.    However, Defendant has refused to issue students or parents partial tuition refunds.

---

[24] https://www.themiamihurricane.com/2020/04/22/remote-learning-just-isnt-the-same-students-say/.

[25] https://coronavirus.miami.edu/updates-and-messages/index.html.

56.     Defendant's refusal to refund tuition comes as even the university's president confirmed the lower quality of the online-only education provided to students as reflected in Miami's student newspaper's discussion regarding the potential return to online learning in Fall 2020: "UM students have shared misgivings about the value of online classes, but [Miami President] Frenk assured that any online format in the fall would be a much higher quality than the emergency online instruction given this semester."[26]

57.     As Miami President Frenk described the rushed shift to online classes "in the end we had 10 days to migrate every single course" but that the university is now working of "taking full advantage of all the capacities of high quality online instruction . . . ."[27]

## V.      CLASS ACTION ALLEGATIONS

58.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All people paying Defendant, in whole or in part, personally and/or on behalf of others, for Spring 2020 tuition and fees for in-person instruction and use of campus facilities, but were denied use of and/or access to in-person instruction and/or campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

---

[26] https://www.themiamihurricane.com/2020/05/04/president-frenk-outlines-his-plan-for-a-return-this-fall-2/.

[27] https://www.youtube.com/watch?v=7L-U_izBha8.

59.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

60.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

61.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

62.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

63.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

-15-

a.   Whether Defendant engaged in the conduct alleged;

b.   Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

c.   Whether Defendant breached identical contracts with Plaintiff and the Class Members;

d.   Whether Defendant violated the common law of unjust enrichment;

e.   Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

f.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

64.   The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

65.   Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is the parent of a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff's son was instructed to leave Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition and fees.

66.   Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class

-16-

actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

67.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

68.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

69.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

70.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

## VI.    CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

71.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

72.    Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

73.    Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

74.    Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

75.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Class Members' ability to access university facilities, and/or has evicted Plaintiff's son and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

76.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

77.    Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

78.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

79.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Defendant, *i.e.*, monetary payments for tuition, fees, and/or room and board, so that Plaintiff's son and the Class Members could avail themselves of in-person educational opportunities and utilize campus facilities, including campus dormitories.

80.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the Class Members.

81.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

82.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendant's unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for tuition, fees, and/or room and board.

83.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

84.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether in whole or in part, including through refunds for tuition, fees, and/or room and board.

**COUNT III**

**CONVERSION**

85.      Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

86.      Plaintiff's son and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff's son and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

87.      Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff's son and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff's son from Defendant's facilities.

88.      Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

89.      Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

90.      Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services and/or facility access.

-20-

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

Dated: May 27, 2020

Respectfully submitted,

By: */s/ Stuart Z. Grossman*
Stuart Z. Grossman, Esq.
FBN:  156113
GROSSMAN ROTH YAFFA COHEN, PA
2525 Ponce De Leon, Suite 1150
Coral Gables, FL 33134
(305) 442-8666
szg@grossmanroth.com

Steve W. Berman, Esq. (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000

-21-

Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski, Esq. (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl, Esq. (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated*

-22-